UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HENRY BRIFFEL,

                          Plaintiff,

      -against-

LONG ISLAND UNIVERSITY, and
NELSON MOSES, *Individually*,

                          Defendants.
------------------------------------------------------------------X

Case No.

**COMPLAINT**

**CV 12- 3022**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

**BRODIE, J.**

**ORENSTEIN, M.**

Plaintiff, HENRY BRIFFEL, by his attorneys, PHILLIPS & PHILLIPS, Attorneys at Law, PLLC, upon information and belief, complains as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action charging that Defendants violated the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. § 12101, et seq. ("ADA") and the <u>New York City Human Rights Law, Administrative Code § 8-107</u> et seq. ("NYCHRL"), and seeks to recover lost wages, emotional distress, punitive damages, reasonable attorneys' fees and costs as a result of being **discriminated against**, and ultimately **terminated**, by his employer **solely on the basis his disability (HIV-positive status).**

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §12101 *et. seq.* and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law

pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), based upon Defendants' principal place of business within the Eastern District of New York.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated June 11, 2012, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. Plaintiff HENRY BRIFFEL ("BRIFFEL") is a resident of the County of New York and State of New York.

9. Defendant LONG ISLAND UNIVERSITY ("LIU") is a private nonprofit university, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its main campus located at 720 Northern Boulevard, Brookville, New York 11548.

10. Plaintiff BRIFFEL was, at all times relevant, a full-time employee of Defendant LIU.

11. Upon information and belief, Defendant NELSON MOSES ("MOSES"), at all time herein mentioned, was and is an individual residing in the State of New York.

12. At all times herein mentioned, Defendant MOSES was an employee of Defendant LIU, holding the position of "Chair, Communication Sciences Department."

13. At all times herein mentioned, Defendant MOSES was Plaintiff BRIFFEL's supervisor and

had supervisory authority over Plaintiff BRIFFEL.

14. Defendant LIU and Defendant MOSES are collectively referred to herein as "Defendants."

## MATERIAL FACTS

15. Plaintiff BRIFFEL is a HIV-positive man.

16. On or about September 4, 2010, Plaintiff BRIFFEL began working for Defendants as a "Temporary/Acting Academic Advisor" on Defendant LIU's Brooklyn campus, located at 1 University Plaza, Brooklyn, NY 11201.

17. Plaintiff BRIFFEL was earning a salary of approximately $55,000 per year.

18. At the time he was hired, Plaintiff BRIFFEL was concerned for his privacy and sought to preserve the medical confidentiality of his health status.

19. Moreover, Plaintiff BRIFFEL believed that neither his medical condition nor his medications would in any way affect his ability to perform the functions of his position.

20. Accordingly, Plaintiff BRIFFEL did not reveal his HIV-positive status to Defendants until he was forced to do so.

21. Nonetheless, at all times relevant hereto, Plaintiff BRIFFEL was an exemplary employee.

22. Throughout his tenure with Defendants, Plaintiff BRIFFEL was never disciplined, always received compliments for his work performance, and got along well with all of his co-workers.

23. In fact, as a result of his excellent work performance, on or about October 15, 2010, Defendants promoted Plaintiff BRIFFEL to the position of "Program Systems Manager," in which Plaintiff BRIFFEL managed Defendant LIU's Communication Sciences Department's national reaccreditation and board certification by the American Speech

Language Hearing Association ("ASHA").

24. For the following six (6) months, Plaintiff BRIFFEL exceeded all goals set for him and was considered to be an excellent employee.

25. As a result, on or about April 15, 2011, Plaintiff BRIFFEL received yet another promotion to the position of "Academic Advisor and Recruitment Counselor."

26. **However, on or about October 7, 2011, everything suddenly changed when Defendant MOSES learned of Plaintiff BRIFFEL's HIV-positive status.**

27. **Beginning on or about October 7, 2011 and continuing throughout his tenure, Defendants consistently and continuously discriminated against Plaintiff BRIFFEL solely due to his disability (HIV-positive status).**

28. Defendants subjected Plaintiff BRIFFEL to numerous acts of discrimination and disparate treatment, which created a hostile and intimidating work environment, and ultimately resulted in his unlawful termination.

29. **HIV-positive status is considered a "disability" under the ADA and the NYCHRL.**

30. On or about October 6, 2011, Plaintiff BRIFFEL was not feeling well due to symptoms related to his HIV-positive status and was forced to stay home.

31. The following day, on or about October 7, 2011, Plaintiff BRIFFEL's doctors, Dr. Brian Saltzman, MD (Internal Medicine and Infectious Disease) and Dr. Anthony Termine, MD (Psychiatrist), faxed Defendant MOSES medical documentation concerning Plaintiff BRIFFEL's absence the day before, and also informed Defendant MOSES that due to Plaintiff BRIFFEL's illness, he would be out on medical leave from October 10, 2011 through October 14, 2011.

32. Included in the medical documentation that was faxed to Defendant MOSES was a

prescription for the medication, Atripla, a drug widely known for the treatment of HIV infection.

33. Upon information and belief, Defendant MOSES had knowledge of Atripla and its uses, as Defendant MOSES is a Doctor of Speech Language Pathology and runs a Speech and Hearing Clinic at a national recognized university.

34. **Thus, on or about October 7, 2011, by virtue of all the medical documentation and prescriptions, Defendant MOSES became aware of Plaintiff BRIFFEL's disability (HIV-positive status).**

35. Plaintiff BRIFFEL was thereafter out on medical leave from on or about Monday, October 10, 2011 through on or about Friday, October 14, 2011.

36. On or about Monday, October 17, 2011, Plaintiff BRIFFEL's first day back, Defendant MOSES immediately summoned Plaintiff BRIFFEL to a meeting with Raquel Collado, Defendants' Human Resources Manager, and arbitrarily accused Plaintiff BRIFFEL of "failing to upkeep Department records." Plaintiff BRIFFEL was utterly shocked by this reprimand, especially because this wasn't Plaintiff BRIFFEL's responsibility, and Defendant MOSES never even told Plaintiff BRIFFEL to begin this task.

37. Still confused, later that same day, **Plaintiff BRIFFEL complained to Ms. Collado** that he felt that Defendant MOSES's fabricated reprimand was solely due to his disability and in retaliation for taking a week off as a reasonable accommodation for his disability.

38. **Defendant MOSES obviously did not like the fact that Plaintiff BRIFFEL was disabled (HIV-positive status), and thus began a discriminatory campaign against him, all in an effort to set Plaintiff BRIFFEL up for failure, and therefore justifying his termination.**

39. On or about October 18, 2011, Plaintiff BRIFFEL notified Defendant MOSES that he had a doctor's appointment relating to his illness on October 21, 2011 and would thus need to leave work a little early. While Defendant MOSES never had any issues with employees leaving work early for doctor's appointments, he flatly denied the request and told Plaintiff BRIFFEL, **"No, you can't go."** As a result, Plaintiff BRIFFEL was forced to cancel his doctor's appointment.

40. Next, on or about October 31, 2011, Defendant MOSES again summoned Plaintiff BRIFFEL into another meeting with Ms. Collado, and this time, reprimanded Plaintiff BRIFFEL for "being late to work." Once again, this was completely false and was only done to help generate a written record that could be used to justify an otherwise unlawful and discriminatory termination based on Plaintiff BRIFFEL's disability.

41. During this same meeting, when Defendant MOSES realized that Ms. Collado was not agreeing with his reprimands, Defendant MOSES told Ms. Collado, **"I will not work with him anymore as long as he needs to attend doctor's appointments or get treatment."**

42. Defendant MOSES was therefore admitting that he was refusing to work with an employee who was sick and disabled (HIV positive).

43. **Furthermore, Defendant MOSES also began to assign Plaintiff BRIFFEL an abundance of work that he thought Plaintiff BRIFFEL could not complete, as a way to justify future reprimands and eventual termination**. The work assignments that Defendant MOSES delegated were unfairly and disproportionately distributed to Plaintiff BRIFFEL.

44. By way of example, on or about November 10, 2011, Defendant MOSES instructed Plaintiff BRIFFEL to complete all the "Course Credit Evaluations" and told him that he

wanted it within twenty-four (24) hours. Then, later that same day, Defendant MOSES scheduled Plaintiff BRIFFEL to proctor a 2-day long final exam, thereby preventing him from being able to complete the "Course Credit Evaluations" within twenty-four (24) hours.

45. On or about November 14, 2011, Defendant MOSES again called Plaintiff BRIFFEL into a meeting with Ms. Collado and again falsely reprimanded Plaintiff BRIFFEL for "failing to upkeep the Department records." Just as Plaintiff BRIFFEL had explained the first time, this was not his job responsibility, and in fact, had done everything that Defendant MOSES had requested of him.

46. Later that afternoon, on or about November 14, 2011, Plaintiff BRIFFEL emailed Defendants' Human Resources Department and complained that Defendant MOSES was still treating him differently due to his illness.

47. On or about December 12, 2011, not surprisingly, Defendant MOSES randomly handed Plaintiff BRIFFEL a written reprimand reiterating everything that he had alleged in each of his previous frivolous reprimands, and all of which Defendants' Human Resources Department had found to be unsubstantiated.

48. **As such, Plaintiff BRIFFEL immediately called Ms. Collado complaining of Defendant MOSES's continuous discrimination and retaliation. In response, Ms. Collado agreed with Plaintiff BRIFFEL and advised him, "you never should have received it."**

49. Unfortunately, Defendants never took any reasonable action in response to Plaintiff BRIFFEL's numerous complaints of illegal discrimination and retaliation by Defendant MOSES, thereby allowing it to continue.

50. On or about January 9, 2012, Plaintiff BRIFFEL emailed Defendant MOSES and Defendants' Human Resources Department to advise both that his work computer was

broken and needed to be fixed.

51. While Defendant MOSES never even responded to Plaintiff BRIFFEL's email, on or about January 12, 2012, Defendants' Human Resources Department scheduled a meeting during which Plaintiff BRIFFEL explained that because his work computer was not functioning, he had been forced to use his personal computer. **Defendants' Human Resources Department confirmed that his computer would be fixed and never mentioned that there were any issues or problems with him doing work on his personal computer**.

52. On or about January 17, 2012, Defendant MOSES walked up to Plaintiff BRIFFEL and just said, "We need to go to HR at 3:00." Although Plaintiff BRIFFEL assumed that this was just the latest example of Defendant MOSES's discrimination, Plaintiff BRIFFEL never expected to be terminated. However, that is exactly what occurred.

53. **On or about January 17, 2012, when Plaintiff BRIFFEL arrived at Defendants' Human Resources Department, Defendants suddenly terminated his employment under the pretext that he "used his personal computer to do work."**

54. Defendants' reason for firing Plaintiff BRIFFEL was clearly pretextual, as Defendants never even told Plaintiff BRIFFEL that he wasn't allowed to use his personal computer.

55. In addition, while Defendants allowed other employees to use their personal computers do to work, and neither disciplined nor terminated any of them, Defendants immediately terminated Plaintiff BRIFFEL's employment for using his personal computer to do work.

56. Moreover, also rather suspicious, Defendant MOSES never had any problems with Plaintiff BRIFFEL's work performance before learning of his disability (HIV-positive status).

57. **On or about January 18, 2012, Plaintiff BRIFFEL received a letter dated January 17, 2012, from Defendants' Vice President for Human Recourses, Daniel J. Rodas, stating,**

8

**"This letter confirms your recent conversation with your supervisor, advising you that your employment with Long Island University will terminate effective February 16, 2012."**

58. Quite suspect, Defendants neglected to even include the reason for Plaintiff BRIFFEL's termination in their letter.

59. Defendants also clearly perceived Plaintiff BRIFFEL as being disabled and believed that this disability would interfere with his ability to perform his job duties in the future.

60. Plaintiff BRIFFEL felt offended, disturbed, and humiliated by this illegal termination.

61. Plaintiff BRIFFEL's HIV-positive status is an impairment that substantially limits one or more of his major life activities within the meaning of § 12102(1)(A) of the ADA.

62. Plaintiff BRIFFEL is a qualified individual who can perform the essential functions of his employment with a reasonable accommodation as defined by § 12111(8) of the ADA.

63. **Defendants failed to provide an accommodation or engage in the interactive process regarding Plaintiff BRIFFEL's requests for a reasonable accommodation.**

64. **Defendants terminated Plaintiff BRIFFEL's employment solely due to his disability and in retaliation for requesting a reasonable accommodation for his disability.**

65. **But for the fact that Plaintiff BRIFFEL was disabled and had requested a reasonable accommodation for his disability, Defendants would not have terminated his employment.**

66. Plaintiff's performance was, upon information and belief, above average during the course of his employment with Defendants.

67. Plaintiff has been unlawfully discriminated against, humiliated, retaliated against, has been degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

68. **Defendants' actions and conduct were intentional and intended to harm Plaintiff BRIFFEL.**

69. As a result of Defendants' actions, Plaintiff BRIFFEL feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

70. As a result of the Defendants' discriminatory treatment of Plaintiff BRIFFEL, he has suffered severe emotional distress and physical ailments.

71. As a result of the acts and conduct complained of herein, Plaintiff BRIFFEL has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

72. As a result of the above, Plaintiff BRIFFEL has been damaged in an amount in excess of the jurisdiction of the Court.

73. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
(Not Against Individual Defendant)

74. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

75. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code,

beginning at section 12101.

76. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

77. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability and/or perceived disability.

78. As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendant)

79. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

80. The ADA prohibits retaliation, interference, coercion, or intimidation.

81. 42 U.S.C. § 12203 provides:

 (a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
 (b) Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

82. Defendants violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

85. Defendants violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

86. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under this chapter, or attempt to do so."

88. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

89. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

90. New York City Administrative Code Title 8-107(19) **Interference with protected rights**. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

91. Defendants violated the section cited herein as set forth.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

92. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93. New York City Administrative Code Title 8-107(13) **Employer liability** for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        i. the employee or agent exercised managerial or supervisory

        responsibility; or

    ii.   the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

    iii.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

  c.   An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an **independent contractor**, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

94. Defendants violated the section cited herein as set forth.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise

discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

97. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**JURY DEMAND**

98. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") and the New York City Human Rights Law, Administrative Code § 8-107 et seq. (the "NYCHRL"), by discriminating against Plaintiff on the basis of his disability, and then unlawfully terminating his employment due to his disability and perceived disability and in retaliation for requesting a reasonable accommodation for his disability;

B. Awarding damages to the Plaintiff, retroactive to the date of his discharge for all lost wages and benefits resulting from Defendants' unlawful termination of his employment and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
      June 15, 2012

                                                      **PHILLIPS & PHILLIPS, ATTORNEYS AT LAW, PLLC**

By: _____
William K. Phillips, Esq. (wp0409)
*Attorneys for Plaintiff*
30 Broad Street, 35th Floor
New York, New York 10004
(212) 248-7431
tpglaws@yahoo.com

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Henry Briffel<br>220 West 17th Street, Apt 3b<br>New York, NY 10011 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2012-01777 | Austin F. Turner, Investigator | (212) 336-3750 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ]  More than 180 days have passed since the filing of this charge.

[X]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_Kevin J. Berry_,
District Director

6/11/12
(Date Mailed)

cc:  Director
Human Resources
LONG ISLAND UNIVERSITY
700 Northern Boulevard
Brookville, NY 11548

William Phillips
PHILLIPS & PHILLIPS
30 Broad Street, 35th Floor
New York, NY 10004